AARON M. KINIKINI (Bar No. 10225)
LAURA HENRIE (Bar No. 12449)
Disability Law Center
205 North 400 West
Salt Lake City, Utah 84103
Phone:  (801) 363-1347
Fax:  (801) 363-1437
Email:  akinikini@disabilitylawcenter.org
         lhenrie@disabilitylawcenter.org


*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GREG TURNER as legal guardian of S.T., a minor child;<br><br>      Plaintiff,<br>v.<br><br>ALPINE SCHOOL DISTRICT; Alpine School District Board of Education; Samuel Y. Jarman, in his official capacity as Superintendent of Alpine School District; Ryan Burke, in his official capacity as Special Education Director of Alpine School District; Gary Richmond, in his official and individual capacity; and Jane Does 1–3, in their official and individual capacities; UTAH STATE BOARD OF EDUCATION; and Sydnee Dickson, in her official capacity as the State of Utah Superintendent of Public Instruction;<br><br>      Defendants. | **COMPLAINT**<br><br>(Jury Demand)<br><br><br>Civil No. 2:19-cv-00870-TS<br><br>Judge: Senior Judge Ted Stewart<br><br>Magistrate Judge_____ |

### INTRODUCTION

This civil rights complaint is brought on behalf of a minor child, legally blind, non-

verbal, and subject to numerous physical and mental limitations, who was violently assaulted,

punched, slapped, painfully restrained, forcibly seized, verbally abused and cruelly taunted by a

school bus driver employed by Alpine School District ("ASD"). These attacks occurred on

multiple occasions over the course of several days, and were witnessed by at least three (3) other

ASD employees. Audio and video recordings of these events were captured via the school bus

security camera, and copies of the recordings are in possession of plaintiff's counsel as well as

defendant ASD.  With the court's leave, and together with other documents containing sensitive,

personal identifying information about S.T., true and complete copies of the video recordings

will be filed under seal, and be included and incorporated by reference as exhibits to this

complaint.[1]

Therefore, Plaintiff, S.T., by and through counsel, Disability Law Center, complains,

states, alleges and claims as causes of action against defendants as follows:

## PRELIMINARY STATEMENT

This 42 U.S.C. § 1983 action seeks damages and equitable relief from the unlawful

policies, practices, actions and/or inactions of defendant ALPINE SCHOOL DISTRICT, as

controlled by defendant ALPINE SCHOOL DISTRICT BOARD OF EDUCATION, enforced

and implemented by defendants SAMUEL Y. JARMAN and RYAN BURKE, and for the

damages resulting from actions taken pursuant to such policies and practices, which occurred

within the scope and course of the employment of the individual defendants, GARY

RICHMOND and JANE DOES 1–3 (all the foregoing Alpine School District entities, directors

and employees, whether identified by proper names or referred to using pseudonyms, are

---

[1] *See "*Plaintiff's *Ex Parte* Motion for Leave to file Complaint Exhibits A-F under Seal," and Proposed Order
anticipated to be document 3, to be filed forthwith in the instant action (Doc. 2).

collectively and hereinafter, "the ASD defendants"). The actions and policies of the ASD

defendants have been tacitly approved of, condoned, or permitted to persist without correction,

by the actions and/ or inactions of defendant UTAH STATE BOARD OF EDUCATION

("USBE"), as the ultimate authority charged with promulgating, monitoring, and enforcing the

policies, training, and operation of public schools within the state of Utah, and which is the

ultimate state authority responsible for ensuring that all public school activities, programs, and

facilities are in compliance with state, federal and constitutional law.

Plaintiff seeks declaratory judgment, permanent injunctive relief, and damages as well as

legal and equitable relief from defendants' policies and actions which have violated and continue

to violate plaintiff's rights pursuant to Title II of the Americans with Disabilities Act of 1990

("ADA"), 42 U.S.C. § 12131 *et seq.* (2002), and Section 504 of the Rehabilitation Act of 1973

("Rehabilitation Act," or "Rehab Act"), 29 U.S.C. § 794 *et seq* (2011). Plaintiff also brings

claims under the United States Constitution, for violations of her right to be free from violent,

forcible, and unreasonable seizure of her person as guaranteed by the Fourth Amendment, and

for violations of her right to Equal Protection of the laws, both of which have been secured

against the states by the Fourteenth Amendment to the U.S. Constitution.

Plaintiff seeks injunctive relief requiring defendants to correct their violations of

plaintiff's rights, prohibiting defendants from continuing their misconduct in violation of the

ADA, the Rehabilitation Act, and the U.S. Constitution, and from engaging in similar

misconduct in the future.

Plaintiff seeks attorney's fees and court costs pursuant to 42 U.S.C. § 12205 (2010) and

29 U.S.C. § 794(a), and under 42 U.S.C. § 1983 and § 1988.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to hear and decide Plaintiff's ADA and Rehabilitation Act claims pursuant to 42 U.S.C. §12188 (2015),§ 12189 (2008), and 29 U.S.C. § 794(a), as the Plaintiff's claims arise under and are based upon violations of Title II of the ADA, 42 U.S.C. §12182, *et seq*. (2010) and  § 504 of the Rehabilitation Act 0f 1973, 29 U.S.C. § 794 *et seq*.

2.    This Court is vested with original jurisdiction of these claims pursuant to 28 U.S.C. §1331 (2011) and §2201 (2015).

3.    This Court has jurisdiction to hear and decide Plaintiff's claims under the U.S. Constitution pursuant to 28 U.S.C. §1331 (2011).

4.    This court has jurisdiction to grant declaratory relief in this action pursuant to 28 U.S.C. § 2201 (2015).

5.    Venue for this action is proper in the United States District Court for the District of Utah, Central Division pursuant to 28 U.S.C. §§ 125 and §1391(b)-(c) (2015)  because all conduct complained of herein occurred or will occur in Utah County, Utah and in the Central Division of this Court. The subject public entities and services immediately at issue are located in Utah County, Utah. The defendants to this action reside in and/ or have official duties in the Central Division of the District of Utah.

## PARTIES

1.    Plaintiff S.T. is and was at all times alleged herein a citizen and resident of the State of Utah. S.T. is a qualified person with a disability as defined by the ADA and the Rehabilitation Act. S.T. is a minor, limiting her ability to protect her legal interests.  Her father and legal guardian, GREG TURNER ("Mr. Turner"), must therefore represent her interests.

Certain  exhibits to this complaint hereafter referred to and incorporated by reference (specifically, Exhibits A-F) have been filed under seal in order to protect S.T. and other's privacy interests.

2.      Defendant ALPINE SCHOOL DISTRICT ("ASD") is a public-school district, providing educational services to children in the State of Utah.  It is a public entity subject to Title II of the ADA, a recipient of federal funds subject to the Rehabilitation Act, and a "person" within the meaning of 42 U.S.C. § 1983. ("§ 1983")  ASD is sued for both legal and equitable relief.

3.      Defendant UTAH STATE BOARD OF EDUCATION ("USBE") is the ultimate authority over public education within the state of Utah as required by Article X, Section 3 of the Utah Constitution. USBE is and was at all times material hereto charged with the oversight, supervision, implementation, management, and enforcement of all matters relating to the public schools within the State of Utah. USBE is a public entity subject to the ADA and recipient of federal funds subject to the Rehab Act, and is a "person" as defined under § 1983. Defendant USBE is sued for equitable relief by and through the Utah Superintendent of Public Instruction, defendant SYDNEE DICKSON, who is sued in her official capacity for equitable relief only.

4.      Defendant ALPINE SCHOOL DISTRICT BOARD OF EDUCATION ("Alpine School Board") leads and directs the actions, policies, and practices of ASD and consists of seven (7) elected members. The Alpine School Board is and was at all times material hereto charged with the supervision, control, and management of all matters relating to the public schools within ASD boundaries. Alpine School Board is a public entity subject to the ADA and a recipient of federal funds subject to the Rehabilitation Act. Alpine School Board is a "body

corporate" as defined by Utah statute, and may sue and be sued. U.C.A. § 53G-4-401(4). The

Alpine School Board is a "person" as defined by § 1983 and is sued for equitable relief only.

5.      Defendant SAMUEL Y. JARMAN ("Jarman"), is the Superintendent of ASD,

and as such is responsible for the administration of all educational services within ASD, as well

as for the supervision and adequate training of all Associate Superintendents, administrators,

principals, teachers, nurses, bus drivers, para-educators, teachers' aides and other ASD

personnel. Jarman is sued in his official capacity for equitable relief only.

6.      Defendant RYAN BURKE ("Burke") is the Special Education Director of ASD.

Burke is being sued in his official capacity for equitable relief only as the person who directly

oversaw the implementation or failed implementation of policies complained of herein, and for the

systemic failure to provide adequate training to the ASD personnel whose actions and/or inactions

resulted in the unlawful conduct herein alleged.

7.      Defendant GARY RICHMOND ("Richmond") was, at all relevant times, the

driver of the school bus on which S.T. was assaulted. Richmond is being sued in his official and

individual capacities as the ASD employee  who personally assaulted S.T. and violated her civil

rights under color of law, and who is directly responsible for the physical abuse and derogatory

statements complained of herein.  He is being sued for legal and equitable relief.

8.      Defendant JANE DOE 1 ("Jane Doe 1") was, at all relevant times, an aide assigned

to assist Richmond on the special education bus. Jane Doe 1 is being sued in her official and

individual capacities as one of the people directly responsible for allowing the physical abuse and

derogatory statements complained of herein, as well as for her failure under Alpine policy and

Utah law to report the incidents to law enforcement.  She is being sued for legal and equitable relief.

9.      Defendant JANE DOE 2 ("Jane Doe 2") was, at all relevant times, an aide assigned to assist Richmond on the special education bus. Jane Doe 2 is being sued in her official and individual capacities as one of the people directly responsible for allowing the physical abuse and derogatory statements complained of herein, as well as for her failure under Alpine policy and Utah law to report the incidents to law enforcement.  She is being sued for legal and equitable relief.

10.     Defendant JANE DOE 3 ("Jane Doe 3") was, at all relevant times, an aide assigned to assist Richmond on the special education bus. Jane Doe 3 is being sued in her official and individual capacities as one of the people directly responsible for allowing the physical abuse and derogatory statements complained of herein, as well as for her failure under Alpine policy and Utah law to report the incidents to law enforcement.  She is being sued for legal and equitable relief.

11.     At all relevant times, all defendants were, are and will be acting under color of state law, custom and usage, and were and are state actors.

## OPERATIVE FACTS

12.     S.T. is a 16-year-old individual with autism and a severe visual impairment, which are disabilities as defined by the A.D.A. and the Rehabilitation Act.

13.     S.T. at all relevant times attended Horizon School, which is part of ASD. She is, in every way, a qualified person with a disability and is able to successfully attend the public

schools controlled by ASD, provided that reasonable and appropriate accommodations to her disabilities are consistently provided as required under the ADA and Rehab Act.

14.     On information and belief, Horizon School is a special purpose school where students with moderate to severe special needs are sent within ASD. It is an intentionally segregated environment, where students with certain disabilities are categorically assigned, based solely on the fact that they have certain disabilities.

15.     Prior to the beginning of each school year, including this school year, Mr. & Mrs. Turner ("Parents") personally provided to ASD, a document containing a complete set of instructions with a complete set of instructions and information which both suggested and requested that specific necessary accommodations be provided to S.T.in order to keep her calm and to deescalate  potentially problematic behaviors associated with her disabilities. (*See* "Parents' Accommodation Requests re: S.T.," Exhibit A to this complaint, filed under seal)

16.     In addition to their receipt and awareness of the set of reasonable accommodation instructions (Exhibit A, *supra*) provided by Parents, the ASD defendants created and formally adopted a document entitled, "Horizon School Health Plan," which is a two (2) page form frequently created to memorialize and ensure the appropriate treatment of unique medical, emotional or behavioral needs of student for whom such is deemed medically appropriate. S.T.'s "Horizon School Health Plan," contained specific information regarding S.T.'s diagnoses and disabilities, her physical, mental and emotional limitations, detailed descriptions of her unique behavioral tendencies, and importantly, it explicitly prescribed and recommended specific de-escalation and behavior management techniques.  (*See* "Horizon School Health Plan," Exhibit B to this complaint, filed under seal).

17.     The information included in the Horizon Health Plan included, *inter alia,* explicit instructions such as*:* S.T. should be in a harness on the bus; S.T. was prone to self-injurious head-banging when upset and that head injuries were to be carefully guarded against; S.T. was prone to pulling hair; S.T. was prone to being upset at noises or disruptions to her routines; S.T. could often be calmed by singing or counting down from 50. *Id.*

18.     The Horizon School Health Plan was created by ASD for the guidance of ASD staff and for the benefit and protection of S.T.  The Horizon School Health Plan explicitly states that "***bus drivers"*** and ***"Special Ed staff"*** will be ***"trained and deemed competent***" to fulfill the elements described in it. *Id*. (emphasis added).

19.     On information and belief, neither Richmond nor Jane Does 1-3 ever received training from ASD regarding the Horizon School Health Plan.

20.     Although Parents provided ASD with suggested approaches to reasonably accommodate her disabilities, and helpful instructions on how to best manage and control behavior problems associated with S.T's disability (*See* Exhibit A to this complaint, filed under seal), and though ASD created and was obviously aware of the Horizon Health Plan (Exhibit B, described *supra*), ASD chose not to follow any of these crucial instructions, effectively denying Parents' requests for reasonable accommodation in violation of the ADA and Rehab Act.

21.     Moreover, by utterly failing to fulfill its explicit  assurances that ASD  "bus drivers" and other staff caring for S.T. would be both "*trained*" on the elements in the plan, and "*competent*" to safely and appropriately comply with the clear terms of its own internally created Healthcare Plan, ASD administrators including defendants Jarman and Burke exhibited

deliberate indifference to S.T.'s needs and legal rights, as well as a callous disregard of S.T.'s safety and well-being.

22.     On information and belief, ASD failed to take any action whatsoever which could conceivably qualify Richmond or Jane Does 1-3 as "trained and deemed competent" as guaranteed by the Horizon Health Plan. (*See* Exhibit B to this complaint, filed under seal). Such failures to train, supervise, and otherwise prevent the actions and inactions of Richmond and Jane Does 1-3 by ASD demonstrates a pervasive deliberate indifference and disregard for duties and obligations of which they were fully aware. Such actions and failures to act had the proximate and foreseeable results complained of herein.

23.     As a direct and proximate result of the ASD defendants' violation of S.T.'s rights under the ADA, the Rehab Act, and the U.S. Constitution, as described herein, S.T. has suffered and continues to suffer loss of educational and habilitative opportunities and benefits, along with injuries, damages, and losses, including, but not limited to:  emotional distress, fear, anxiety, and trauma; lost and diminished learning capacity; and expenses for past and future medical care, psychological care, and occupational and behavioral therapies.

24.     On information and belief, defendant Utah State Board of Education ("USBE") has the duty to promulgate rules regarding school districts' provision of transportation services to students, including those students with disabilities. USBE also has a duty to monitor school districts' compliance with its own rules and regulations, applicable federal and constitutional law, and crucially, the duty to monitor, investigate, and enforce school districts' compliance with all the foregoing legal obligations.

25.     On information and belief, USBE fails to fulfill its duties to monitor, enforce, and correct the unlawful practices of school districts such as ASD, as described herein.

26.     On information and belief, USBE fails to ensure that students with disabilities, including plaintiff S.T., receive equal access, comparable benefits, and are otherwise free from discrimination in Utah's public schools as required by the ADA and Rehab Act.

27.     On information and belief, USBE fails to encourage and require Utah school districts, such as ASD, to provide students with disabilities, such as S.T., effective and appropriate services and supports in the most integrated and least restrictive environments, as required by the ADA and Rehab Act.

28.     As a proximate and foreseeable result of USBE's failings as described herein, school districts state-wide, including ASD in this instance, consistently and without accountability or consequence, violate their duties under the ADA and Rehab Act, and place students such as S.T. at risk of physical harm due to ineffective and completely inadequate training, insufficient guidance, no meaningful State oversight, and a lack of practical and available enforcement mechanisms, all of which contribute to a system-wide failure  by USBE to deter unlawful actions by school districts such as ASD, which causes harm to children such as S.T., as described herein.

29.     Bus drivers within ASD are not required to obtain any form of training related to transportation and individualized needs of special education children prior to obtaining or retaining employment. *See Frequently Asked Questions about Transportation*, Alpine School District, http: //transportation.alpineschools.org/transportation-information/faq/ (last visited November 5, 2019).

30.     S.T. was segregated from the majority of ASD students and required to ride Richmond's bus based solely upon her status as a person with a disability.

31.     S.T. was segregated from the majority of ASD students and required to attend Horizon School based solely upon her status as a person with a disability.

32.     Requiring S.T. to attend Horizon School prevented her from accessing many of the ASD benefits and services which are available to non-disabled students attending traditional schools within the district, and put her at unreasonable risk of harm due to ASD's failures to adequately train and supervise staff who interact and serve students with disabilities.

~THE SCHOOL BUS ASSAULTS~

33.     On June 12, 2018, S.T. began to slap the hand and pull the hair of Jane Doe 1 on the school bus.

34.     Richmond then intervened by grabbing and holding the wrists of S.T. until it appeared that she had calmed down. (*See* "Bus Recording 1, dated 06/12/2018," Exhibit C  to this complaint, filed under seal).

35.     After a short period, a loud noise causes S.T. to become agitated again and attempt to grab the aide sitting across from her. (*See* "Bus Recording 2, dated 06/12/2018," Exhibit D to this complaint, filed under seal).

36.     Richmond then intervened in the situation by grabbing S.T's hands and bending them forcefully toward her shoulders, causing S.T. to scream out in pain. (*See* "Bus Recording 3, dated 06/12/2018," Exhibit E to this complaint, filed under seal).

37.     As S.T. begins to sob uncontrollably from pain and fear, Richmond refuses to release the violent and aggressive physical control and seizure of her person, in violation of ASD policy, repeatedly asking if S.T. will behave. *Id.* at 0:50.

38.     While S.T. is screaming from the pain being inflicted upon her, Richmond begins to taunt her, making comments such as "it hurts, doesn't it?" *Id.* at 2:12.

39.     During this confrontation, S.T. attempts to push Richmond away from her; he responds by violently striking her in the side of the head. *Id.* at 2:18.

40.     As S.T. attempted to get away from the physical assault, Richmond continued to forcefully restrain and seize her person, causing her obvious pain, completely disregarding her cries and confusion. *Id.* at 2:27.

41.     When S.T. attempted to calm herself, Richmond further escalated the situation by pointing his finger at S.T. and remarking that he doesn't "expect to wrestle with you every damn time!" *Id.* at 3:08.

42.     At this comment S.T. becomes upset again and begins banging her head against the window. Richmond responds by slapping her in the face and telling her that "if [she] breaks [the] window, [she's] gonna have to pay for it!" *Id.* at 3:14.

43.     After another struggle with Richmond, S.T. sat in her seat covering her face with her hands. *Id.* at 4:00.

44.     On June 14, 2018, S.T. threw her backpack at Jane Doe 2 who then grabbed her arms and attempted to de-escalate the situation. (*See* "Bus Recording 4, dated 06/14/2018," Exhibit F to this complaint, filed under seal).

45.     Richmond stopped the bus on the side of the road and moved to the back of the bus after being told that he did not need to. *Id.* at 0:50.

46.      Richmond forcefully grabbed S.T's arms and forced her down into the seat while Jane Doe 3 remarked that he was "good" at dealing with S.T. *Id.* at 2:57.

47.     As Richmond continued to violently restrain S.T., he chose to escalate the situation by asking if S.T. "liked that?" and calling her "an ornery little cuss." *Id.* at 3:33.

48.     When S.T. began banging her head against the wall of the bus, Richmond grabbed her by the back of the neck and forced her body into the prone position, forcing her face into the seat. *Id.* at 3:45.

49.     Richmond then jerks her arms to the sides, forcing her upright and then proceeds to bend her hands backwards behind her back toward her shoulders, where he held them for more than one minute. *Id.* at 4:08.

50.     While S.T. struggled against the pain inflicted by Richmond, he further escalated the situation by making remarks such as "it hurts, doesn't it?" *Id.* at 4:55.

51.     Richmond then forced S.T. into a supine position on the seat while continuing to use extreme levels of force on S.T's arms. *Id.* at 5:28.

52.     After this, Richmond releases S.T. and she begins to calm herself down, however, Richmond then inexplicably provokes her further by pointing his finger at her and demanding, "Now, you behave!" *Id.* at 5:52.

53.     When this action by Richmond causes S.T. to begin banging her head against the wall again, Richmond responds by violently striking her in the back of the head. *Id.* at 5:55.

54.     As S.T. became more agitated, Jane Doe 2 attempted to calm her down and told Richmond to leave her alone so that the aide could attempt to de-escalate the situation, but S.T. began pulling Jane Doe 2's extremely long hair, which resulted in Richmond interfering in the situation again. *Id.* at 6:22.

55.     Once S.T. had released Jane Doe 2's hair, Richmond again forcibly seized S.T.'s person and forced her onto her side while Jane Doe 3 comments, "this is ridiculous." Richmond then bends S.T's hand backward, putting obvious and painful stress on her wrist.  Once again, S.T. reacts in pain and fear by banging her head against the wall. *Id.* at 7:25.

56.     Richmond then violently strikes S.T.'s hand and orders her to "knock it off."  When S.T. again tried to hit her head against the wall, Richmond, once again, violently strikes her in the face, and repeats his order to, "knock it off." *Id.* at 7:40.

57.     Jane Doe 3 then begins to suggest other strategies for situations when "[children] really act dumb like this," but is cut off by S.T. screaming in pain as Richmond continues to bend her hands back toward her shoulders. *Id.* at 8:20.

58.     Richmond then takes his knee and forcefully places it on S.T's leg, effecting a seizure of her person, holding her in place while taunting her by saying that "you know what [S.T.], I am a little stronger than you, ok." Richmond maintained this level of physical restraint and forcible seizure until the aides finally stand S.T. up and lead her off the bus. *Id.* at 8:30.

59.     ASD policy requires that all disciplinary measures taken by a bus driver or administrator is shared with the ASD transportation department, the student's school, and the student's parents. *See Frequently Asked Questions about Transportation*, Alpine School District,

http://transportation.alpineschools.org/transportation-information/faq/ (last visited November 5, 2019).

60.    ASD policy requires that when physical intervention is used against a student, it must be done in compliance with the established ESI protocol by those trained in the use of such protocols and only when less restrictive means are unavailable. (*See* Alpine School District Policy No. 5180, "Discipline," Rules & Regulations §5.3-5.4, Revised July 3, 2018, <u>Exhibit G</u>, *attached*).

61.    Under ASD Discipline policy, the use of prone or face-down physical restraint is prohibited. *Id.* at §5.9.3.1.

62.    Under ASD Discipline policy, the use of supine or face-up physical restraint is prohibited. *Id.* at §5.9.3.2.

63.    Under ASD Discipline policy, the use of physical restraint which obstructs the airway or adversely affects the student's primary mode of communication is prohibited. *Id.* at §5.9.3.3.

64.    Under ASD Discipline policy, physical restraint shall be applied for the minimum amount of time necessary and release conditions must be provided. *Id.* at §5.9.4.1.

65.    Under ASD Discipline policy, physical restraint shall be terminated if the student is in severe distress. *Id.* at §5.9.4.3.

66.    ASD policy requires that when a district employee observes any physical abuse or has reason to believe that physical abuse has occurred, they must immediately report it to the law enforcement or child protection authority. (*See* Alpine School District Policy No. 5420, "Reporting Child Abuse/Neglect of Minors," §1.1, Approved January 2006, <u>Exhibit H</u>, *attached*).

67.     ASD Child Abuse policy states that when an employee required to report a case of abuse fails to do so, they may be guilty of a class B misdemeanor. *Id.* at §1.5.

68.     Utah Code Ann § 62A-4a-403 (1)(a) requires that "when any individual… has reason to believe that a child has been subjected to abuse or neglect, or observes a child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, that individual shall immediately report the alleged abuse or neglect to the nearest peace officer, law enforcement agency, or office of [Child and Family Services]."

69.     Utah Code Ann § 62A-4a-411 states that any person required to report under § 62A-4a-403 "who willfully fails to do so is guilty of a class B misdemeanor."

70.     On information and belief, no reports of the June 12th and June 14th incidents were made by Richmond, Jane Doe 1, Jane Doe 2, or Jane Doe 3., nor by any other ASD personnel.

71.     By willfully failing to report child abuse witnessed first-hand, Jane Doe 1, Jane Doe 2, and Jane Doe 3 violated numerous ASD policies (*supra, passim*), as well as U.C.A. § 62A-4a-403.

72.     These flagrant violations of written polices and state law demonstrate system-wide negligence in ASD's failure to appropriately train employees who instruct, support, educate, and as a most basic function, simply *protect* students with disabilities.

73.     On information and belief, no ASD bus driver who drives non-disabled ASD students to and from school has ever violently assaulted a non-disabled student in a manner comparable to the repeated violent attacks and Fourth Amendment seizures which were perpetrated by Richmond against S.T.

74.     S.T. was subjected to violent acts and violations of her Fourth Amendment rights as a direct and foreseeable consequence of ASD's denial of her right to integrated educational settings as provided under the ADA and Rehab Act, and as guaranteed by the Equal Protection clause of the Fourteenth Amendment.

75.     S.T. was subjected to violent acts and violations of her basic human and civil rights while her non-disabled peers were protected from such by ASD's selective enforcement of its own policies in a manner that discriminates against and confers unequal, inferior benefits on students with disabilities, all in violation of her rights under the ADA, the Rehab Act, and the Equal Protection clause of the Fourteenth Amendment.

76.     S.T. was subjected to violent physical assaults on a segregated bus precisely because ASD chooses to segregate students with disabilities in violation of the ADA and Rehab Act, and the Equal Protection clause.

77.     On information and belief, there have been several instances where S.T. has harmed herself while under the care of ASD, yet there has been no official documentation, report, or explanation of the incidents or injuries provided to Parents.

78.     Following the June 12th and 14th bus incidents, Parents were not informed of the nature of the events that had taken place, only that there was an incident and that ASD would investigate.

79.     In failing to disclose to S.T.'s parents and appropriate law enforcement and/or child protection agencies the repeated violent child abuse perpetrated and facilitated by its own employees, ASD violated its own internal policies and state law.

80.     On information and belief, ASD consistently reports to law enforcement and appropriate state agencies any instance of assault by ASD staff *against non-disabled students*.

81.     The stark contrast in its approach to the staff assaults on S.T. and those situations in which staff have assaulted *non-disabled* students demonstrates a pattern of discrimination against students with disabilities in the enforcement of ASD policy and its compliance with state law. Such discriminatory treatment violates the rights afforded S.T. and similarly situated students under the ADA, Rehab Act, and the Equal Protection clause.

82.     On June 22, 2018, nearly two (2) weeks after the violent assaults against their child, Parents finally learned the true extent of the incidents when a police officer arrived at their home and explained the situation and the events that had taken place.

## CAUSES OF ACTION

83.     Plaintiff, S.T. repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference.

84.     S.T. brings this action under Title II of the ADA, 42 U.S.C. §12131, *et seq*. (2002); the Rehabilitation Act 29 U.S.C. § 794, *et seq* (2011); the Fourth Amendment, applied to the states by the Due Process Clause of the Fourteenth Amendment; the guarantees of Equal Protection of the laws contained in the Fourteenth Amendment, and 42 U.S.C. §1983 (1996).

85.     "[A]ny department agency, special purpose district, or other instrumentality of a State or States or local government" are Public Entities under the ADA.  42 U.S.C. § 12131(1)(B).

86.     Under the Rehabilitation Act, "a local education agency" is a covered "program or activity," if they receive Federal funds.  29 U.S.C. § 794(b)(2)(B).

87.     Title II of the ADA prohibits, *inter alia*, discrimination on the basis of disability by any public entity. *See* 42 U.S.C. § 12132 (2010). Public entities, in order to avoid discrimination, must "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i) (2008). In addition, "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." *Id.* at § 35.130(a). Finally, public entities must "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Id.* at §35.130(d).

88.     The Rehabilitation Act prohibits discrimination on the basis of disability by any covered program or activity receiving financial assistance from the Federal government. 29 U.S.C. § 794(a). Discrimination under the Rehabilitation Act includes a covered entity, in providing an "aid, benefit, or service," denying a qualified individual with a disability "the opportunity to participate in or benefit from the aid, benefit or service." 34 C.F.R. § 104.4(b)(1)(i) (2012). Covered entities also must not provide those aids, benefits, or services to qualified individuals with disabilities in a manner that is not equal to or as effective as that provided to others. *Id.* at §§ 104.4(b)(1)(ii)-(iii).

89.     As described, *supra*, defendants denied S.T. benefits of their services solely on the basis of her disability. Defendants have also failed to modify their policies and procedures to avoid this discrimination against S.T. The transportation services and educational services being

provided to S.T. are not equal to or as effective as those provided to others, and she is not being served in the most integrated setting appropriate.

90.     Under the ADA, defendants are not required "to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others."  28 C.F.R. § 35.139(a) (2016).

91.     However, in making that determination, defendants "must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probably that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk."  *Id.* at § 35.139(b).

92.     Further, "[a] public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities.  However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities."  *Id.* at § 35.130(h) (2008).

93.     Defendants did not adhere to the requested accommodation strategies suggested and requested by Parents which included measures necessary to protect S.T. from problems associated with her disability (*See* Exhibit B to this complaint, filed under seal). This failure and lack of understanding by defendants led to S.T. being placed in harm's way. Further, defendants did not report the initial incident on June 12, 2018 immediately as required under ASD policy. Such reporting would have allowed corrective measures to be taken and could have prevented the subsequent incident on June 14, 2018.

94.     Richmond, Jane Doe 1, Jane Doe 2, and Jane Doe 3 chose to react to the behavioral problems exhibited by S.T. with violence based solely upon their irrational, uninformed, and untrained instincts and beliefs that the violent outburst of a disabled child was best resolved with a greater level of violence. The individual defendant's actions and beliefs were not based on any reliable information or training provided by Parents in their efforts to obtain a reasonable accommodation for S.T. while under the custody and control of defendants, nor was it informed by the Horizon Health Plan which all ASD personnel interacting with S.T. should have been competently trained to competently implement

95.     Defendants failed to make reasonable accommodations to policies and procedures when necessary to ensure that those protected under the ADA and Rehabilitation Act, such as S.T., are given equal and complete access to the benefits and services provided to those without a disability when they failed to require additional training or individualized knowledge for those drivers and aides that operate and ensure the safety of special needs children, including S.T.

96.     Because defendants refused to modify their policies for S.T. and denied her full and equal access to its school based solely on her disability, they have violated Title II of the ADA and the Rehabilitation Act.

97.     S.T., despite her disabilities, is completely able to attend defendants' schools and programs provided that reasonable accommodations and auxiliary services are established, updated as necessary, and adhered to by all ASD employees and staff. Defendants' denial of access and failure to accommodate, solely on the basis of S.T.'s disabilities, constitutes intentional disability-based discrimination.

98.     Defendants' conduct, described above, was intentional and taken in reckless disregard of the rights afforded S.T. under the ADA and Rehabilitation Act.

99.     Defendants' conduct, described above had the effect denying S.T. the equal protection of the law, on the basis of her disability, in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment to the U.S. Constitution.

100.    Additionally, the physical violence, abuse, excessive force and unlawful restraint inflicted upon S.T. by Richmond constitutes an unconstitutional seizure under the Fourth Amendment of the United States Constitution as applied to the states through the Due Process Clause of the Fourteenth Amendment.

## Count I Brought Against All Defendants for Equitable Relief

**(Failure to Modify Policies, Practices, or Procedures in Violation of the ADA)**

101.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

102.    Pursuant to Title II of the ADA, defendants are prohibited from failing to make reasonable modifications to policies, practices, or procedures when such are necessary to avoid discrimination, unless such criteria can be shown to "fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

103.    Defendants' refusal to modify their policies, practices, or procedures prevents S.T. from accessing their educational services.   The reasonable modifications needed by S.T., if provided, would not constitute a fundamental alteration of those services, as additional training is required of a wide range of other occupations and positions within ASD which deal with special

education programs and special needs children. Defendants' actions result in discrimination based on S.T.'s disabilities, in violation of Title II of the ADA and implementing regulations.

## Count II Brought Against All Defendants for Equitable Relief

### (Denial of Access in Violation of the ADA)

104.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

105.    Title II of the ADA prohibits public entities, such as ASD and other defendants, from discriminating against a person with a disability because of their disability by denying them the opportunity to participate in or benefit from the services, programs, or activities of the entity. 42 U.S.C. § 12132 (2010).

106.    Defendants' refusal to allow S.T. access to integrated school services because of her disabilities discriminates against her by denying her the opportunity to participate in and benefit from the educational services defendants offer, in violation of the ADA and implementing regulations.

## Count III Brought Against All Defendants for Equitable Relief

### (Failure to Provide Services in the Most Integrated Setting Appropriate to S.T.'s Needs in Violation of the ADA)

107.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

108.    As a public entities under Title II of the ADA, ASD and other defendants must administer their services "in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d) (2008).

109.    Defendants' insistence that S.T. not travel to or attend school with her non-disabled peers, but receive a segregated educational experience because of their failure to provide reasonable and necessary modifications is a failure to administer services to her, a qualified individual with a disability, in an integrated setting and/ or in the most integrated setting appropriate to her needs, in violation of Title II of the ADA and implementing regulations.

## Count IV Brought Against All Defendants for Equitable Relief

### (Denial of Participation in Education Services in Violation of the Rehabilitation Act)

110.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

111.    Under the Rehabilitation Act, a recipient of Federal financial assistance must not deny a qualified individual "the opportunity to participate in or benefit from the aid, benefit or service" they provide.  34 C.F.R. § 104.4(b)(1)(i) (2012).

112.    Defendants, all of whom are recipients of federal funds, have refused S.T. the opportunity to participate in, and to fully and equally benefit from, their transportation services by denying her safe and appropriate transportation to and from the full range of ASD educational services solely on the basis of her disability in violation of the Rehabilitation Act and implementing regulations.

## Count V Brought Against All Defendants for Equitable Relief

### (Providing Unequal and Less Effective Educational Services in Violation of the

### Rehabilitation Act)

113.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

114.    The Rehabilitation Act prohibits a covered entity from providing aids, benefits, or services to qualified individuals with disabilities in a manner that is not equal to or as effective as that provided to others. *Id.* at §§ 104.4(b)(1)(ii)-(iii).

115.    Because of her disability, defendants have required S.T. to receive educational services in a segregated, restrictive, and completely isolated setting, as compared to the services provided to S.T.'s non-disabled peers. These services are inherently unequal to and obviously inferior to and less effective than those provided to other students without disabilities, which violates the Rehabilitation Act and implementing regulations.

## Count VI Brought Against USBE for Equitable Relief

### (Failure to Provide Oversight and Enforcement in Violation of the ADA)

116.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

117.    Title II of the ADA prohibits public entities, such as ASD and other defendants, from discriminating against a person with a disability because of their disability by denying them the opportunity to participate in or benefit from the services, programs, or activities of the entity. 42 U.S.C. § 12132 (2010).

118.    The Utah Constitution vests USBE with the general control and supervision of the state public education system. Utah Const. Art. X § 3.

119.    Through the persistent and repeated failure of USBE to supervise the actions of public education entities, such as ASD, USBE has created an environment in which the

segregation and vicious assault against S.T. could occur without repercussion in violation of the ADA.

### Count VII Brought Against USBE for Equitable Relief

### (Failure to Provide Oversight and Enforcement in Violation of the Rehab Act)

120.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

121.    The Rehab Act prohibits a covered entity from providing aids, benefits, or services to qualified individuals with disabilities in a manner that is not equal to or as effective as that provided to others.  *Id.* at §§ 104.4(b)(1)(ii)-(iii).

122.    The Utah Constitution vests USBE with the general control and supervision of the state public education system. Utah Const. Art. X § 3.

123.    Through the persistent and repeated failure of USBE to supervise the actions of public education entities such as ASD as described herein, USBE has fostered an environment in which the abuse and neglect suffered by  S.T., is both foreseeable and likely to be repeated due to a dearth of meaningful state oversight, a lack of viable complaint processes, insufficiently funded investigative mechanisms, and a widespread assumption among school districts that their unlawful conduct is unlikely to  result in any sanctions by USBE. As a result, Utah school districts are not deterred from engaging in systemic ADA and Rehab Act violations which harm students with disabilities in ways similar to the harms experienced by S.T. and complained of herein.

**Count VIII Brought Against All ASD Defendants**

**for Legal & Equitable Relief, including Monetary Damages**

**(Violations of the U. S. Constitution as applied to the states via the 14th Amendment: Unlawful Seizure in Violation of the 4th Amendment; Denial of Equal Protection on the basis of disability, in violation of the Equal Protection clause of the 14th Amendment)**

124.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

125.    The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure…against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. 4.

126.    The United States Supreme Court has ruled that the protections against unreasonable searches and seizures applies to the states under the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961).

127.    Defendants unreasonably seized S.T. through the actions of Richmond which extended far beyond any contemplated intervention tactic of ASD related to behavioral issues of children within their purview. The malicious and violent attacks against S.T. which included acts such as restraining her arms behind her back and placing a knee on her leg to prevent movement constitutes an unreasonable seizure in violation of the Fourth Amendment as applied to the states through the Due Process Clause of the Fourteenth Amendment.

128.    As alleged above, the ASD defendants deprived S.T. of the full and equal protection of the law, solely on the basis of her disability, by placing her in an inherently dangerous environment, staffed by completely untrained staff, and in stark contrast to the

superior services and protections provided to students without disabilities, in violation of the

Equal Protection clause of the Fourteenth Amendment.

### Count IX Brought Against All ASD Defendants

### for Legal & Equitable Relief including Monetary Damages

### (Deprivation of Civil Rights by Defendants Acting Under Color of Law)

129.    Plaintiff, S.T., repeats and re-alleges each and every allegation contained in the

foregoing paragraphs and incorporates the same herein by reference, and further alleges as follows:

130.    S.T. is a qualified person with a disability and is entitled to the protections afforded

by the ADA and Rehabilitation Act as described herein.

131.    Under color of state law, defendants by their conduct herein alleged, willfully and

without justification discriminated against S.T. on the basis of her disability and have deprived

S.T. of her right to reasonable accommodation and full benefits of a public program as afforded

by the ADA and Rehabilitation Act, in violation of 42 U.S.C. § 1983.

132.    As a result of these deprivations of her rights under federal law, S.T. has suffered

anxiety and other distress by being forced to endure physical violence and abuse at the hands of

an ASD employee tasked with ensuring her safety during her transportation to and from Horizon

School; S.T.'s mental and emotional health has deteriorated and her progress in all phases of

development has been substantially slowed and in important respects, declined precipitously.

133.    By virtue of their foregoing conduct, defendants have violated 42 U.S.C. § 1983

and S.T. is entitled such relief as the Court finds to be appropriate, including, but not limited to,

declaratory relief, injunctive relief, compensatory damages, punitive damages, and the costs and

expenses of this action.

**DECLARATORY RELIEF**

134.    This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 (2011) for the purpose of determining a question of actual controversy between plaintiff and defendants.

135.    Plaintiff, S.T., is entitled to a declaratory judgment concerning each of defendants' violations of the ADA and implementing regulations, as well as their violations of the Rehabilitation Act and implementing regulation and specifying S.T.'s rights with regard to defendants' services and facilities.

**INJUNCTIVE RELIEF**

136.    This action seeks injunctive relief pursuant to 42 U.S.C. § 12188 and Rule 65 of the Federal Rules of Civil Procedure.

137.    Plaintiff, S.T., is entitled to a permanent injunction requiring that each and every defendant correct their respective violations of the ADA, Rehabilitation Act, and applicable implementing regulations as such relate to S.T., and requiring that each defendant  also be enjoined from any further discriminatory exclusion of S.T. from their school system and services, and that S.T. and others similarly situated receive the full and equal benefit of the enforcement mechanisms and regimes of USBE such that flagrant violation of federal statutes and constitutional rights by school districts such as ASD are effectively exposed,  reasonably investigated, consistently punished, and otherwise effectively deterred.

138.    With regard to defendant USBE, plaintiff S.T. is entitled to a permanent injunction requiring that USBE's administrative rule-making, dispersal of federal funds to school districts, budgetary and programmatic oversight of school districts, and all enforcement activities aimed at ensuring that school districts comply with their legal obligations  are carried out in strict

conformance with the mandates of the ADA and the Rehab Act; and that USBE fulfill its duties, including but not limited to:  ensuring meaningful compliance by Utah school districts with the integration mandates of the ADA as informed by *Olmstead v. L.C.*, 527 U.S. 581 (1999), and its progeny; aggressively enforcing strict compliance by school districts with the reasonable accommodation mandates as set forth in both the ADA and the Rehab Act; and by providing an effective, robust, and meaningful set of mechanisms, procedures, and administrative process aimed at protecting students with disabilities and which effectively deter unlawful school district policies, practices, customs and conduct which subject students such as S.T. to the harms complained of herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff S.T. requests that the Court:

1.  Exercise jurisdiction over this action;

2.  Enter a declaratory judgment on behalf of S.T., declaring that all of the defendants' actions described herein are in violation of Title II of the ADA, Section 504 of the Rehabilitation Act, and their implementing regulations;

3.  Enter a declaratory judgment on behalf of S.T., declaring that the ASD defendants' actions are in violation of the Fourth Amendment proscription against unreasonable seizure, and that the ASD defendants' policies violate S.T.'s right to Equal Protection of the laws, as provided in the United States Constitution, and which apply to the states through the Due Process Clause of the Fourteenth Amendment;

4.  Enter a declaratory judgment  that the ASD defendants' actions are in violation of 42 U.S.C. § 1983 inasmuch as they violated S.T.'s rights under clearly established federal statutes

and the Constitution of the United States, as described herein.

5.   Enter a permanent mandatory injunction ordering all defendants to cease their exclusion of S.T. from their public schools, and ordering defendants to grant S.T.'s requested modifications and effectively accommodate S.T.'s disability;  ordering all defendants to cease their exclusion of S.T. and other disabled persons from participation or benefits of services and activities when the exclusion or denial occurs by reason of such disability; and an order directing all defendants to otherwise comply in all respects with their various obligations under the ADA and Rehab Act.

6.   An award of general and special damages against all ASD defendants, as to be determined by the Court, but at least nominal in amount; including an award of appropriate punitive damages against ASD for the extraordinary, outrageous, egregious, and shocking conduct complained of herein; conduct which was encouraged and caused by ASD's intentionally discriminatory system of educating students with disabilities in inherently separate and unequal settings, and conduct which was the foreseeable and proximate result of ASD's deliberate indifference and complete dereliction of its duty to adequately train and supervise employees who serve students with disabilities, including S.T.

6.   Award to S.T. all costs and attorney's fees expended herein and assess all such costs against defendants;

7.   Grant S.T. such other and further relief as may be deemed just, equitable and appropriate by the Court.


RESPECTFULLY SUBMITTED, THIS the 6th DAY OF November 2019.

DISABILITY LAW CENTER

Attorneys for Plaintiff


By /s/ Aaron M. Kinikini
　　AARON M. KINIKINI
　　LAURA HENRIE

## <u>CERTIFICATE OF SERVICE</u>

I, Jennifer Carver hereby certify that the foregoing PLAINTIFF'S EX PARTE MOTION TO FILE COMPLAINT EXHIBITS A–F UNDER SEAL is being electronically filed using the CM/ECF system on this 6th day of November 2019, which will send notices of such filing to all registered CM/ECF users

*/s/ Jennifer Carver*
Jennifer Carver