IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREG TURNER, as legal guardian of S.T., a minor child,<br><br>Plaintiff,<br><br>v.<br><br>ALPINE SCHOOL DISTRICT; ALPINE SCHOOL DISTRICT BOARD OF EDUCATION; SAMUEL Y. JARMAN, in his official capacity as Superintendent of Alpine School District; RYAN BURKE, in his official capacity as Special Education Director of Alpine School District; GARY BERTAGNOLE, in his official and individual capacity; and JANE DOES 1–3, in their official and individual capacities; UTAH STATE BOARD OF EDUCATION; and SYDNEE DICKSON, in her official capacity as the State of Utah Superintendent of Public Instruction,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS<br><br><br>Case No. 2:19-CV-870 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on a Partial Motion to Dismiss filed by Defendants Alpine School District, Alpine School District Board of Education, Samuel Y. Jarman, Ryan Burke, the Utah State Board of Education, and Sydnee Dickson (collectively, "Defendants").[1] Subsequent to filing the Motion, Plaintiff voluntarily dismissed the Utah State Board of Education and Sydnee Dickson, and all causes of action against them.[2] This leaves Plaintiff's first, second,

---

[1] Defendant Gary Bertagnole has filed an Answer and has not joined in this Motion.

[2] Docket No. 23.

1

fourth, fifth, and eighth causes of action, and his claims against Defendants Jarman and Burke as the subject of Defendants' Motion.

## I. BACKGROUND

Plaintiff Greg Turner is the father and legal guardian of S.T., a minor child. S.T. is a 16-year-old individual with autism and severe visual impairments. S.T. attended Horizon School, which is part of the Alpine School District.

Defendant Gary Bertagnole was the driver of a school bus on which S.T. was a passenger. Plaintiff alleges that Defendant Bertagnole assaulted S.T. on two separate occasions in June 2018. Plaintiff brings several claims based on this alleged conduct.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[3] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]

---

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] As the Court in *Iqbal* stated,

> [o]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[8]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[9] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[10] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[11]

### III.  DISCUSSION

A.   FIRST CAUSE OF ACTION

Plaintiff's first cause of action alleges that Defendants failed to modify policies, practices, or procedures in violation of Title II of the Americans with Disabilities Act ("ADA"). 28 C.F.R. § 35.130(b)(7)(i) provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination

---

[7] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[8] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[9] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[10] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[11] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

3

on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

Plaintiff alleges that the reasonable modification of policies, practices, or procedures necessary to avoid discrimination on the basis of disability was additional training.  The Tenth Circuit "has not recognized a failure-to-train claim of discrimination under the ADA, but we have not foreclosed the possibility."[12]

Assuming such a claim exists, it requires a showing of deliberate indifference.[13] "Deliberate indifference/failure-to-train claims arise in civil rights actions under 42 U.S.C. § 1983.  [The Tenth Circuit has] relied on § 1983 decisions in addressing failure-to-train ADA claims."[14]

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.[15]

"Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure . . . ."[16]  The fact that additional training

---

[12] *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1297 (10th Cir. 2016).

[13] *Id.* at 1298; *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[14] *J.V.*, 813 F.3d at 1298.

[15] *Bryson v. City of Okla. City*, 627 F.3d 784, 789 (10th Cir. 2010) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998)).

[16] *City of Canton*, 489 U.S. at 389.

may have been beneficial is not sufficient.  The Supreme Court has made clear that merely showing that additional training would have been helpful or could have avoided the injury is not sufficient to establish liability.[17]  "Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal."[18]

Plaintiff makes no allegations that there was a pattern of assaults on disabled students.  Thus, Plaintiff's claim depends on demonstrating the alleged assaults on S.T. were a highly predictable or plainly obvious consequence of the alleged failure to better train its bus drivers.  Plaintiff's allegations do not support such an inference.

Plaintiff's Amended Complaint alleges that the school district was aware of S.T.'s disabilities and proposed steps to ensure that S.T. did not endanger herself.  However, the fact that the school district knew of S.T.'s disabilities and her potential to harm herself hardly shows that the school district was on notice that additional or better training was necessary.

Plaintiff also points to the Horizon School Health Plan for S.T., which Plaintiff asserts requires school personnel to be "trained and deemed competent."[19]  However, Plaintiff fails to state the entire sentence of the Health Plan, thereby distorting its meaning.  The entire sentence states that, by signing the agreement, S.T.'s parents "acknowledge that some procedures may be delegated to school personnel that have been trained and deemed competent with the procedure

---

[17] *Connick v. Thompson*, 563 U.S. 51, 68 (2011); *City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").

[18] *City of Canton*, 489 U.S. at 391.

[19] Docket No. 6 Ex. B, at 2.

by the school nurse."[20]  Thus, rather that requiring all school personnel to be "trained and deemed competent" with respect to all matters contained in the Health Plan, this sentence only relates to certain procedures overseen by the school nurse.

Finally, Plaintiff provides evidence that the Utah State Board of Education published guidance, suggesting that local education agencies ensure that bus drivers be aware of each student with a disability who rides in their vehicles along with other information relevant to their transportation.  However, Plaintiff alleges that this guidance was issued in February 2019, months after the alleged assaults.  Thus, it could not provide notice to the school district about the need for more or better training.  Additionally, "in the absence of any information about the specific events that precipitated the [guidance], the mere fact of the [guidance] does not establish that 'the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of' Title II or § 504, that the [school district] 'can reasonably be said to have been deliberately indifferent to the need' for such training."[21]  Further, the guidance does not dictate any special training.  It only states that drivers should be aware of those students who ride in their vehicles that have disabilities.  Therefore, this cause of action is dismissed.

B.  SECOND AND FOURTH CAUSES OF ACTION

Plaintiff's second and fourth causes of action assert claims under Title II of the ADA and § 504 of the Rehabilitation Act.  To state a claim under Title II, Plaintiff must allege that (1) she is a qualified individual with a disability, (2) who was excluded from participation in or denied

---

[20] *Id.*

[21] *Cropp v. Larimer Cty.*, 793 F. App'x 771, 785 (10th Cir. 2019) (quoting *J.V.,* 813 F.3d 1298) (third alteration in original).

the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.[22] To state a claim under § 504, Plaintiff must prove (1) that she is a "handicapped individual" under the Act, (2) that she is "otherwise qualified" for the benefit sought, (3) that she was discriminated against solely by reason of her handicap, and (4) that the program or activity in question receives federal financial assistance.[23]

In response to the Motion to Dismiss, Plaintiff clarifies that his claims are based on the allegations that "S.T. was in fact effectively denied access to transportation services when ASD failed to provide training to transportation staff regarding the detailed instructions and interventions described in S.T.'s Health Plan."[24] Based upon this statement, these claims are merely a repackaging of Plaintiff's first cause of action. They fail for the same reason and must be dismissed. Moreover, there are no well-pleaded allegations that S.T. was discriminated against because of her disability.

C.     FIFTH CAUSE OF ACTION

The regulations promulgated under the Rehabilitation Act provide: "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance."[25] A covered entity may not "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service

---

[22] *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007)).

[23] *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011).

[24] Docket No. 26, at 18.

[25] 34 C.F.R. § 104.4(a).

7

that is not equal to that afforded others;" or "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others."[26]

Plaintiff's claim of unequal and ineffective aid is based on allegations that non-disabled students were not subject to assaults, as is alleged to have occurred to S.T., and that the school district consistently reports any instance of assault by its staff against non-disabled students but failed to do so with respect to S.T. These allegations are both internally inconsistent and conclusory. Plaintiff offers no facts to support his claims that non-disabled students are not subject to assault or that the school district regularly reports such assaults. Indeed, if there are no assaults, there would be nothing for the school district to report. Thus, these allegations are insufficient to state a claim and this cause of action is dismissed.

D.  EIGHTH CAUSE OF ACTION

Plaintiff's eighth cause of action alleges an unlawful seizure under the Fourth Amendment and a violation of equal protection under the Fourteenth Amendment. Defendants argue that the alleged assaults do not qualify as seizures under the Fourth Amendment. The Court need not determine this issue at this stage because Defendants make no argument as to Plaintiff's equal protection claim. Thus, even accepting Defendants' argument, this claim would not be resolved in its entirety and, therefore, dismissal is not appropriate.[27] However, the Court

---

[26] *Id.* § 104.4(b)(1)(ii)–(iii).

[27] *FTC v. Nudge, LLC*, ---F. Supp. 3d---, 2019 WL 7398678, at *13 & nn.121–22 (D. Utah Dec. 31, 2019) (explaining that partial dismissal of claims is not appropriate under Rule 12(b)(6)); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief. Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for "[p]artial [s]ummary [j]udgment" and require parties to "identif[y] each claim or

would note that Plaintiff's claim may be better analyzed as a violation of substantive due process under the Fourteenth Amendment.[28] Since the parties have not addressed this issue, the Court declines to do so.

E.   JARMAN AND BURKE

Defendants argue that Jarman and Burke are not persons for purposes of § 1983 liability. The Court need not decide this issue because Plaintiff's allegations against these two Defendants fail for a more fundamental reason.

"Section 1983 does not authorize liability under a theory of respondeat superior."[29] "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation."[30]

> A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.[31]

Plaintiff's allegations against Jarman and Burke are largely contained in two paragraphs. Plaintiff alleges:

> 5. Defendant SAMUEL Y. JARMAN ("Jarman"), is the Superintendent of ASD, and as such is responsible for the administration of all educational services within ASD, as well as for the supervision and adequate training of all Associate

---

defense—or the part of each claim or defense—on which summary judgment is sought.") (internal citation omitted).

[28] *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 653–54 (10th Cir.1987).

[29] *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

[30] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dobbs v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).

[31] *Dobbs*, 614 F.3d at 1199.

Superintendents, administrators, principals, teachers, nurses, bus drivers, para-educators, teachers' aides and other ASD personnel. Jarman is sued in his official capacity for equitable relief only.

6. Defendant RYAN BURKE ("Burke") is the Special Education Director of ASD. Burke is being sued in his official capacity for equitable relief only as the person who directly oversaw the implementation or failed implementation of policies complained of herein, and for the systemic failure to provide adequate training to the ASD personnel whose actions and/or inactions resulted in the unlawful conduct herein alleged.[32]

Plaintiff then makes the conclusory allegations that Jarman and Burke acted with deliberate indifference.[33] These allegations are simply insufficient to state a claim against these Defendants and they will be dismissed.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Partial Motion to Dismiss (Docket No. 20) is GRANTED IN PART AND DENIED IN PART.

DATED this 2nd day of June, 2020.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[32] Docket No. 4 ¶¶ 5–6.

[33] *Id.* ¶ 21.